UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| MARILYN S. WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:09-CV-150 |
| | ) | (VARLAN/SHIRLEY) |
| RENTENBACH ENGINEERING, | ) | |
| CONSTRUCTION DIVISION, | ) | |
| RENTENBACH CONSTRUCTORS, INC., | ) | |
| AUTUMN ALEXANDER, | ) | |
| KIMBERLY MICHELLE HAMMONTREE, | ) | |
| and CAROL JAMERSON, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

This civil action is before the Court on Defendants Rentenbach Engineering, Construction Division,[1] Rentenbach Constructors, Inc., and Carol Jamerson's (collectively, the "Defendants'") Motion to Dismiss Plaintiff's Claim Relating to the June 18, 2001 Hardship Distribution, in which defendants contend that this claim is barred by the applicable statute of limitations [Doc. 7]. Plaintiff filed a response in which she contends that this claim is not barred by the applicable statute of limitations [Doc. 12]. Defendants filed a reply brief [Doc. 16]. This motion is now ripe for the Court's consideration.

---

[1]Rentenbach notes in its motion to dismiss that Rentenbach Engineering Company, Construction Division is incorrectly identified in plaintiff's complaint as Rentenbach Engineering, Construction Division [*see* Doc. 7]. For consistency's sake, this Court uses the name of defendant as it appears in the complaint.

**I.     Background**

Plaintiff filed a Complaint against defendants, as well as against Autumn Alexander and Kimberly Michelle Hammontree, on March 9, 2009 in the Chancery Court for Knox County, Tennessee [Doc. 1-1]. The case was removed to this Court on April 1, 2009 [Doc. 1]. In her complaint, plaintiff alleges that she married Major Pressley Watson, Jr. on January 25, 1969, and remained legally and lawfully married to him until his death on June 13, 2007 [Doc. 1-1]. She also alleges that Mr. Watson was employed by Rentenbach from September 15, 1986 until his death in 2007, and accumulated certain retirement assets during that time under a Profit Sharing and Asset Accumulation Plan (the "plan") [*Id.*]. This plan was administered by Rentenbach [*Id.*]. It is governed by the Employee Retirement Income Security Act ("ERISA") [*Id.*]. The plan requires that a married employee obtain written consent from his or her spouse prior to receiving certain plan distributions [*Id.*].

Plaintiff alleges that, at some point in 1999, and after thirty years of marriage, Mr. Watson left plaintiff and the marital home to cohabitate with his "paramour," Ms. Hammontree, who is a former Rentenbach employee [*Id.*]. Plaintiff further alleges that on June 18, 2001, October 14, 2004, and July 1, 2005, Mr. Watson, acting in concert with Ms. Ramogene Johnson, the plan administrator, fraudulently obtained plan distributions in the amount of $67,500.00, $10,000.00, and $30,000.00, respectively [*Id.*].

Defendants filed a motion to dismiss plaintiff's claim relating to the June 18, 2001 distribution, and a memorandum in support of that motion, on April 17, 2009 [Docs. 7, 8]. In their memorandum, defendants argue that the claim arising from the June 18, 2001

2

distribution is barred by the applicable statute of limitations [Doc. 8]. Plaintiff filed a response, and a memorandum in support of that response, on June 25, 2009 [Docs. 12, 13]. In her memorandum, plaintiff argues that her claim arising from the June 18, 2001 distribution is not barred by the applicable statute of limitations [Doc. 13]. Defendants filed a reply on July 15, 2009 [Doc. 16].

The Court has carefully reviewed the motion to dismiss, the response, the reply, and the memorandums in support. For the reasons that follow, defendants' motion will be granted.

**II.    Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) permits a party to file a motion to dismiss for failure to state a claim upon which relief may be granted. This includes claims that are barred by the applicable statute of limitations. "On a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 502 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990), the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) will therefore not be

3

granted "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### III. Analysis

Plaintiff brings her claims under 29 U.S.C. §§ 1055 and 1109.[2] 29 U.S.C. § 1055, entitled "Requirement of joint and survivor annuity and preretirement survivor annuity," governs the spousal consent conditions for certain elements of ERISA-qualifying plans. 29 U.S.C. § 1055(a)(2), for example, provides that, "in the case of a vested participant [in an ERISA-qualifying plan] who dies before the annuity starting date [under such plan] and who has a surviving spouse, a qualified preretirement survivor annuity shall be provided to the surviving spouse of such participant." A plan meets ERISA requirements, however, only if "under the plan, each participant may elect at any time to waive the . . . qualified preretirement survivor annuity form of benefit." *Id.* § 1055(c)(1)(A)(i). Election under § 1055(c)(1)(A)(i) "shall not take effect unless the spouse of the participant consents in writing to such election," and "the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public." *Id.* § 1055(c)(2)(A).

29 U.S.C. § 1109(a) provides that

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this

---

[2] Plaintiff mistakenly refers to these sections in her complaint as "29 U.S.C. § 18-1055" and "29 U.S.C. § 18-1109," respectively, presumably because they appear in Chapter 18 of Title 29 of the U.S. Code. This Court omits reference to the chapter number in citing these provisions.

4

subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . .

29 U.S.C. § 1113 supplies the relevant statute of limitations for breach of fiduciary duty actions brought under 29 U.S.C. § 1109. 29 U.S.C. § 1113 provides that "[n]o action may be commenced . . . with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of–

(1) [S]ix years after . . . the date of the last action which constituted a part of the breach or violation . . . , or

(2) [T]hree years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

As previously discussed, plaintiff alleges that unlawful distributions occurred on June 18, 2001, October 14, 2004, and July 1, 2005 [Doc. 1-1]. Plaintiff further alleges that she did not become aware of these distributions until August 2007, while meeting with Rentenbach after Mr. Watson's death [*Id.*]. Plaintiff filed her complaint in the instant case on March 9, 2009, nearly eight years after the first allegedly unlawful distribution [*see Id.*].

The question before this Court is clear. If, as the defendants argue, the June 18, 2001 distribution is the first in a series of three discrete distributions, then the statute of limitations bars plaintiff from bringing a claim based upon that distribution. In this scenario, application of 29 U.S.C. § 1113(1) yields a limitations period that expires on June 18, 2007. Application of 29 U.S.C. § 1113(2) yields a limitations period that expires in August 2010. Under the statute, the earlier of these two expiration dates–June 18, 2007–would apply. The statute of

5

limitations would thus bar plaintiff's claim related to the June 18, 2001 distribution, because the complaint was filed nearly two years after the expiration of the statute of limitations period applicable to that claim.

On the other hand, if, as plaintiff argues, the June 18, 2001 distribution was merely the beginning of a fiduciary breach that continued, and did not conclude, until the July 1, 2005 distribution, then the statute of limitations does not bar plaintiff November 9, 2009from bringing a claim based upon that distribution. In that scenario, application of 29 U.S.C. § 1113(1) yields a limitations period that expires on July 1, 2011. Application of 29 U.S.C. § 1113(2) yields a limitations period that expires in August 2010. Under the statute, the earlier of these two expiration dates–August 2010–would apply. The statute of limitations would thus not bar plaintiff's claim related to the June 18, 2001 hardship distribution, because she filed her complaint more than a year prior to the expiration of the statute of limitations period applicable to that claim.

Neither party provides case law to support its statute of limitations argument. Nor has this Court, after an exhaustive search, uncovered precedent in ERISA cases setting forth an analytical framework for distinguishing between a series of independent breaches of fiduciary duty and a single breach manifesting itself on separate occasions in a statute of limitations context. Nevertheless, upon close scrutiny of plaintiff's complaint, this Court finds that the allegations contained therein reflect not a single breach, but rather a series of independent breaches.

6

Instead of alleging a single violation of 29 U.S.C. §§ 1055 and 1109 comprising the three unlawful distributions she identifies, for example, plaintiff enumerates these incidents separately in her complaint, alleging unique violations of 29 U.S.C. §§ 1055 and 1109 on June 18, 2001, October 14, 2004, and July 1, 2005 [*see* Doc. 1-1]. Each distribution was accompanied by a separate authorization form [*see* Docs. 1-1, 16]. And none of these distributions was tied to, or conditioned upon, any other distribution [*see* Doc. 16].

Each claim, moreover, accrues under its own set of unique facts. Exhibits B and C to plaintiff's complaint, for example, consist of spousal consent forms allegedly bearing the forged signature of plaintiff, and permitting Mr. Watson to make withdrawals from his plan on October 14, 2004 and July 1, 2005, respectively [Doc. 1-1]. By contrast, Exhibit A, which is an application for withdrawal of funds made on June 18, 2001, contains only the signature of Mr. Watson, and is not accompanied by a spousal consent form [*see* Doc. 1-1].[3] Each of these withdrawals, as defendants correctly note, represents a separate and self-contained breach of fiduciary duty which would, if true, suffice to constitute an independent violation of 29 U.S.C. § 1109(a).[4] For these reasons, 29 U.S.C. § 1113 bars plaintiff's claim arising from the June 18, 2001 distribution.

---

[3] This appears to be because Mr. Watson represents himself as "divorced" in this application.

[4] Although plaintiff does not argue the point, this Court notes that the "fraud or concealment" exception to 29 U.S.C. § 1113 does not toll the statute of limitations in this case. That provision only applies where a fiduciary has attempted to hide the alleged breach from the party commencing the action. Plaintiff raises no such allegation in her complaint.

7

Plaintiff argues in the alternative that her claim falls under 29 U.S.C. § 1132(a)(3). 29 U.S.C. § 1132(a)(3) provides that "[a] civil action may be brought by a . . . beneficiary . . . to obtain . . . appropriate equitable relief . . . to redress . . . violations [of this subchapter or the terms of an ERISA-covered plan] or . . . to enforce any provisions of this subchapter or the terms of the plan." Plaintiff argues further that because 29 U.S.C. § 1132(a)(3) contains no statute of limitations, the Court "should apply the most analogous state law statute of limitations," *Meade v. Pension Appeals & Review Comm.*, 966 F.2d 190, 194-95 (6th Cir. 1992), which plaintiff argues appears in Tennessee Code Annotated § 28-3-105.

As plaintiff herself notes, 29 U.S.C. § 1132(a)(3) operates "as a catch all provision under which individualized relief may be sought if no other specific provision applies" [*see* Doc. 13]. Because plaintiff's claims are appropriately styled as alleging breaches of fiduciary duty under 29 U.S.C. § 1109, however, 29 U.S.C. § 1113, and not Tennessee Code Annotated § 28-3-105, sets forth the relevant statute of limitations. As a consequence, this Court need not consider further plaintiff's invocation of 29 U.S.C. § 1132(a)(3) or Tennessee Code Annotated § 28-3-105.

## IV. Conclusion

However harsh the results of their application, statutes of limitations that bar claims represent considered determinations of the legislature that this Court is not empowered to disturb. *See Montgomery v. Wyeth*, 580 F.3d 455, 467 (6th Cir. 2009) (quoting *Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 314 (1945)) (Jackson, J.) ("Statutes of limitations find their justification in necessity and convenience rather than in logic . . . They represent a public

8

policy about the privilege to litigate.") For the reasons just discussed, defendants' Motion to Dismiss Plaintiff's Claim Relating to the June 18, 2001 Hardship Distribution [Doc. 7] is hereby **GRANTED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan<br>UNITED STATES DISTRICT JUDGE