UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MARILYN S. WATSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 3:09-CV-150 |
| | ) (SHIRLEY/VARLAN) |
| v. | ) |
| | ) |
| RENTENBACH ENGINEERING, | ) |
| CONSTRUCTION DIVISION, | ) |
| RENTENBACH CONSTRUCTORS, | ) |
| INCORPORATED, | ) |
| KIMBERLY MICHELLE HAMMONTREE, | ) |
| CAROL JAMERSON, and | ) |
| AUTUMN ALEXANDER, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

This case came before the Court on Defendants Rentenbach Engineering Construction Division, Rentenbach Constructors, Inc. (hereinafter "Rentenbach") and Carol Jamerson's (collectively "Defendants") Motion for Judgment on the ERISA Administrative Record and Memorandum in Support [Docs. 30 and 31]. The motion was referred [Doc. 32] to the undersigned on January 9, 2013, pursuant to 28 U.S.C. § 636(b).

Having considered the Defendants' motion and memorandum in support and relevant legal authority, the Court finds and recommends that the Defendants' Motion for Judgment on the ERISA Administrative Record [**Doc. 30**] be **GRANTED**.

1

I.   BACKGROUND

Marilyn S. Watson ("Plaintiff") filed a Complaint [Doc. 1-1] against the Defendants on March 9, 2009,[1] in Chancery Court for Knox County, Tennessee. On April 1, 2009, the Defendants filed a Notice of Removal [Doc. 1] to remove this matter to the United States District Court for the Eastern District of Tennessee.

In the Complaint, the Plaintiff alleges that she was married to Major Pressley Watson, Jr., from 1969 until his death on June 13, 2007. [Doc. 1-1]. From September 15, 1986 to 2007, Mr. Watson was employed by Rentenbach. [Doc. 1-1]. During his employment with Rentenbach, Mr. Watson accumulated certain retirement assets under a Profit Sharing and Asset Accumulation Plan ("Plan"). [AR 9-63, 135]. The Plan was administered by Rentenbach and governed by the Employment Retirement Income Security Act ("ERISA"). [AR 22; Doc. 1-1]. Vanguard Fiduciary Trust Company ("Vanguard") was the trust administrator. [AR 2, 80]. As Mr. Watson's spouse, the Plaintiff was automatically the beneficiary. [AR 90]. On a Designation of Beneficiary form, Mr. Watson stated that his wife was Marilyn S. Watson. [AR 90].

Pursuant to section 5.01(a)(2) of the Plan, Mr. Watson could elect to receive a distribution from his accumulated retirement assets after reaching 59.5 years old. [AR 41]. Distributions, however, are subject to the spousal consent requirements contained in §§ 401(a)(11) and 417 of the Internal Revenue Code. [AR 41-42]. Sections 401(a)(11) and 417 require that before a plan participant can elect to waive a joint and survivor annuity:

> (A)(i) the spouse of the participant consents in writing to such election, (ii) such election designates a beneficiary in (or a form of benefits) which may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without any requirement of further consent by the spouse), and (iii) the spouse's consent acknowledges the effect of

---

[1] The Plaintiff named other defendants in the Complaint, including Autumn Alexander and Kimberly Michelle Hammontree, who are not relevant for purposes of this Report and Recommendation.

> such election and is witnessed by a plan representative or a notary public, or
>
> (B) it is established to the satisfaction of a plan representative that the consent required under subparagraph (A) may not be obtained because there is no spouse, because the spouse cannot be located, or because of such other circumstances as the Secretary may be regulations prescribe.

26 U.S.C. § 417.

On October 14, 2004,[2] Mr. Watson requested an $8,500[3] distribution from his accumulated retirement assets. [AR 96]. Because Mr. Watson was older than 59.5 years, Rentenbach was not required to approve the distribution. [AR 5]. The spousal consent form was signed "M. S. Watson". [AR 96]. The document was notarized by Defendant Jamerson. [AR 96]. In addition, the document states that "Michelle Watson" appeared before Defendant Jamerson to execute the document. [AR 96]. Vanguard distributed the funds. [Doc. 1-1 at 5; Doc. 31 at 3].

On July 1, 2005, Mr. Watson requested an additional $30,000 distribution from his accumulated retirement assets. [AR 92-94]. Again, because Mr. Watson was older than 59.5 years, he did not need approval from Rentenbach. [AR 5]. The spousal consent form was signed "Marilyn S. Watson" and notarized by Autumn Alexander. [AR 93]. Vanguard distributed Mr. Watson's request on July 8, 2005. [AR 95].

In the Complaint, the Plaintiff alleges that she was unaware of these distributions and was only made aware after Mr. Watson's death in June 2007. [Doc. 1-1 at 6]. She states that on October 14, 2004, and July 1, 2005, Defendant Rentenbach, while acting negligently or willfully,

---

[2] In addition, on June 18, 2001, Mr. Watson elected to withdraw money based upon "hardship." [AR 103-04]. Mr. Watson indicated on this form that he was divorced. [AR 104]. Because Mr. Watson had not reached the required age of 59.5 years, his request had to be approved by Rentenbach. [AR 5]. The distribution was approved by Ramogene Johnson, the employee benefits administrator. [AR 104]. Pursuant to a Memorandum Opinion and Order [Doc. 17], however, the Court dismissed this claim because it was beyond the statute of limitations.
[3] The Complaint states that Mr. Watson requested $10,000. [Doc. 1-1 at 5]. The Defendants' memorandum also states that Mr. Watson requested $10,000. [Doc. 31 at 3]. However, the record shows that only $8,500 was requested. [AR 96].

3

violated 29 U.S.C. §§ 1055 and 1109. She also alleges that Defendant Rentenbach breached its fiduciary duty by failing to obtain her consent pursuant to § 29 U.S.C. 1055. Finally, the Complaint asserts that Defendant Rentenbach, while acting in its capacity as an employer and plan administrator, negligently or willfully failed to obtain her consent to distribute funds from the Plan because it knew or should have known that she and Mr. Watson were married. [Doc. 1-1 at 6].

In addition, the Plaintiff alleges that on October 14, 2004, Defendant Jamerson, while acting in her capacity as notary public and within the course and scope of her employment, knowingly or negligently notarized a forged document that purported to provide the Plaintiff's consent to withdraw funds from the Plan.

The Plaintiff seeks compensatory damages in the amount of $110,000, plus an addition sum to represent the value of the Plan at Mr. Watson's death; attorney fees, expenses, and costs; and any further relief to which she may be entitled.[4]

## II. POSITIONS OF THE PARTIES

The Defendants' motion argues that they should be granted judgment on the ERISA Administrative Record and the Complaint should be dismissed with prejudice.[5] Specifically, the Defendants articulate three grounds for dismissal. First, the Defendants assert that the actions of Vanguard and Rentenbach should be reviewed under an arbitrary and capricious standard. [Doc. 31 at 4-5]. Under this standard, the Defendants argue that they are not liable for the early distribution of funds. [Doc. 31 at 13]. Second, the Defendants argue that Defendant Jamerson

---

[4] In the Complaint, the Plaintiff also requested that the Court award punitive damages in the amount of $1,800,000.00, [Doc. 1-1]. Subsequently, however, the Plaintiff and the Defendants stipulated that the request for punitive damages would be dismissed with prejudice. [Doc. 14].
[5] The Defendants' motion was filed only with regard to Defendants "Rentenbach" and Jamerson and not as to Hammontree or Alexander.

4

was not a fiduciary to the Plan and that any claim against her for negligence is preempted by ERISA. [Doc. 31 at 6]. Finally, the Defendants assert that the Plaintiff's claim against Defendant Rentenbach for breach of fiduciary duty is not authorized under 29 U.S.C. § 1109. [Doc. 31 at 9].

The Plaintiff did not respond to the Defendants' Motion for Judgment on the Administrative Record, and the period for responding has expired, see E.D. Tenn. L.R. 7.1; Fed. R. Civ. P. 6(d), 59(b)(2)(E). The Court may treat the Plaintiff's failure to respond during the time allowed under the rule as acquiescence to the relief sought. See E.D. Tenn. L.R. 7.2; see also Campbell v. McMinn County, 2012 WL 369090 (E.D. Tenn. 2012) (Curtis, C.J.) ("Plaintiff's failure to respond effectively waives any objections that he may have had on this matter."). The Defendants' Motion for Judgment on the Administrative Record may be granted on this basis alone. Nevertheless, the Court will review the Defendants' arguments as follows.

### III.  ANALYSIS

The Court will address each of the Defendants' arguments in turn.

#### A.  Arbitrary and Capricious Standard

The Defendants assert that the decisions of Vanguard and Rentenbach to distribute funds to Mr. Watson should be reviewed under an arbitrary and capricious standard. [Doc. 31 at 4]. The Defendants argue that under this standard, Vanguard acted prudently and Rentenbach did not breach its fiduciary duty to the Plaintiff. [Doc. 31 at 11].

In Wilkins v. Baptist Healthcare Sys., the Sixth Circuit stated that there are two possible standards of review governing ERISA claims. 150 F.3d 609, 616, 619 n.4 (6th Cir. 1998). "In cases in which a plan administrator is given no discretionary authority by the plan, review of the

plan administrator's decision by the district court . . . is *de novo*, with respect to both the plan administrator's interpretation of the plan and the plan administrator's factual findings." Id. at 616 (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). On the other hand, an arbitrary and capricious standard governs "when a benefits plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. at 619 n.4. The grant of discretionary authority does not require the use of the word "discretion" or any other "magic word." Perez v. Aetna Life Ins. Co., 150 F.3d 550, 555 (6th Cir. 1998) (quoting Johnson v. Eaton Corp., 970 F.2d 1569, 1572 n.2 (6th Cir. 1992)) (other citations omitted). While certain words are not required, "this circuit has consistently required that a plan contain 'a clear grant of discretion [to the administrator] to determine benefits or interpret a plan.'" Id. (quoting Wulf v. Quantum Chem. Corp., 26 F.3d 1368, 1373 (6th Cir. 1994)).

In the instant matter, the Court finds that the arbitrary and capricious standard is proper. Section 7.03(C)(1) of the Plan states:

> The Plan Administrator shall be charged with the duties of the general administration of the Plan, including, but not limited to, the following:
>
> 1. To determine all questions of interpretation or policy in a manner consistent with the Plan's documents and the Plan Administrator's construction or determination in good faith shall be conclusive and binding on all persons except as otherwise provided or by law. Any interpretation or construction shall be done in a nondiscriminatory manner and shall be consistent with the intent that the Plan shall continue to be deemed a qualified plan under the terms of Section 401(a) of the Code, as amended from time-to-time, and shall comply with the terms of ERISA, as amended from time-to-time.

[AR 53]. The Court agrees with the Defendants in that similar grants of authority to construe and interpret plans have been held to grant discretionary power. See Belluardo v. Cox Enter., Inc., 157 F. App'x 823, 827-28 (6th Cir. 2005) (recognizing that "plan language giving the

6

administrators the power to interpret the plan and make administrative decisions thereunder and making the administrators' decision on such matters conclusive" warrants the use of the arbitrary and capricious standard); Administrative Comm. of the Sea Ray Employees' Ownership and Profit Sharing Plan v. Robinson, 164 F.3d 981, 986 (6th Cir. 1999) (stating that the term "interpret" is likely enough to establish discretion); Borda v. Hardy, Lewis, Pollard & Page, P.C., 138 F.3d 1062, 1066-68 (6th Cir. 1998) (discretion found where the plan stated that the administrator had the power to make determinations in connection with administration, interpretation, and application of the plan and such determinations were "conclusive and binding"). Accordingly, the Court finds that the arbitrary and capricious standard governs.

Next, the Defendants argue that under this standard Vanguard's actions were prudent and Rentenbach did not breach its fiduciary duty by distributing funds to Mr. Watson. [Doc. 31 at 11].

Courts have explained that the arbitrary and capricious standard "is the least demanding form of judicial review of administrative action." Gibson v. Prudential Ins. Co of Am., 513 F. Supp. 2d 950, 957 (E.D. Tenn. 2007) (quoting Killian v. Healthsource Provident Admin., Inc., 152 F.3d 514, 520 (6th Cir. 1998)). Moreover, "[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." Id. (quoting Killian, 152 F.3d at 520). The plan administrator's "decision will be upheld if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." Baker v. United Mine Workers of Am. Health and Ret. Funds, 929 F.2d 1140, 1144 (6th Cir. 1991).

The Complaint alleges that Defendant Rentenbach violated its fiduciary duty by distributing funds to Mr. Watson without obtaining spousal consent pursuant to 29 U.S.C. §

7

1055. Section 1055(a)(1) states that "in the case of a vested participant who does not die before the annuity starting date, the accrued benefit payable to such participant shall be provided in the form of a qualified joint and survivor annuity." A plan participant may elect to waive the survivor annuity and designate another beneficiary if:

> (A)(i) the spouse of the participant consents in writing to such election, (ii) such election designates a beneficiary (or a form of benefits) which may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without any requirement of further consent by the spouse), and (iii) the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public.

29 U.S.C. § 1055(c)(2)(A)(1). If a plan fiduciary relies on the consent or revocation of the spouse, "then such consent, revocation, or determination shall be treated as valid or purposes of discharging the plan from liability to the extent payments made pursuant to such Act." 29 U.S.C. § 1055(c)(6).

In the present matter, in light of no opposition from the Plaintiff, the Court finds that Rentenbach did not breach its fiduciary duty pursuant to § 1055. Originally, Mr. Watson designated "Marilyn S. Watson" as his spousal beneficiary. [AR 90]. Later, when Mr. Watson requested funds in 2001, he wrote on the application that he was divorced. [AR 104]. In addition, a loan application from Citizens National Bank indicated that he was paying the Plaintiff alimony in the amount of $200 per month. [AR 110]. On October 14, 2004, he requested an additional amount. [96-97]. The spousal consent form for the October 14 request states that "Michelle Watson" appeared before a notary.[6] [AR 96]. The document was notarized by Defendant Jamerson and signed "M.S. Watson." [AR 96]. Above M. S. Watson's signature the

---

[6] Whether the reference to Michelle is an error, a scrivener's error, or other mistake by the notary is unknown. While Defendant noted this fact in its brief, [Doc. 31 at 3], no elaboration is made. As noted herein, the Plaintiff did not file any response. The remainder of the document references "M.S. Watson" as the spouse and consentor.

8

document states, "I am the spouse of the participant requesting a withdrawal. I hereby consent to my spouse's withdrawal election[.]" [AR 96].

In addition, the July 1, 2005 request for funds was also accompanied by a notarized document. [AR 93]. The document was notarized by Autumn Alexander and signed by "Marilyn S. Watson." [AR 93]. The face of the July 1, 2005 document appears valid. In fact, both of the spousal consent forms appear valid on their face. Both contained signatures of Mr. Watson's purported wife and both were notarized. It is reasonable that upon receiving these documents, funds would be distributed. To the extent the Court would look to either federal common law and/or state law for guidance on this issue, mere allegations of forgery of a signature on a plan document in the face of undisputed evidence of the signatures being notarized, the result would still favor the Defendants in this case.[7]

Based upon the two notarized documents purporting to give spousal consent and the Plaintiff's failure to respond to the Defendants' motion, the Court finds that Defendant Rentenbach did not violate its fiduciary duty to the Plaintiff with respect to § 1055.

**B. Claims as to Defendant Jamerson**

The Complaint alleges that Defendant Jamerson, while acting in her capacity as a notary public and while in the course and scope of her employment, knowingly or negligently notarized a forged document that purported to provide the Plaintiff's consent to withdraw funds from the Plan. [Doc. 1-1 at 6]. The Defendants object on two grounds. First, the Defendants argue that Defendant Jamerson was not a fiduciary to the Plan so that she cannot be liable for any claim

---

[7] With regard to deeds, courts have acknowledged that "there is a legal presumption that a notary public notarizing a deed has acted lawfully[.]" Barnes v. SRI Surgical Exp., Inc., No. 1:09-cv-204, 2012 WL 1059935, at *17, n.13 (E.D. Tenn. Mar. 28, 2012) (quoting Estate of Wooden v. Hunnicutt, No. M2004-01038-COA-R3-CV, 2005 WL 2546918, at *3 (Tenn. Ct. App. Oct. 11 2005)) (other citations omitted); see also Beazley v. Turgeon, 772 S.W.2d 53, 59 (Tenn. Ct. App. 1998) ("A notary's acknowledgement says to the world that the execution of the instrument was carried out according to law.").

arising under ERISA for breach of fiduciary duty. [Doc. 31 at 6, 9]. Second, the Defendants assert that the claim for negligence against her is preempted by ERISA. [Id.].

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." In re Goodyear Tire & Rubber Co. v. ERISA Litig., 438 F. Supp. 2d 783, 789 (N.D. Ohio 2006) (quoting Chao v. Hall Holding Co., Inc., 285 F.3d 415, 425 (6th Cir. 2002)) (other citations omitted). In order to determine whether a person is of fiduciary status, the Court is to look at the agreement of the parties. Guardsmark, Inc. v. BlueCross and BlueShield of Tenn., 169 F. Supp. 2d 794, 800 (W.D. Tenn. 2001). In addition, "ERISA also extends fiduciary liability to functional fiduciaries." Id. As explained in Goodyear:

> A person is a fiduciary under ERISA to the extent that he: (1) exercises any discretionary authority or control with respect to the management of a plan, or exercises any authority or control with respect to the management or disposition of plan assets; (2) renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of the plan, or has any authority or responsibility to do so; or (3) has any discretionary authority or discretionary responsibility in the administration of the plan.

438 F. Supp. 2d at 789 (citing 29 U.S.C. § 1002(21)(A)). A person performing "purely ministerial functions" is not a fiduciary. Guardsmark, 169 F. Supp. 2d at 800 (stating that "[e]ntering codes, applying mathematical formulas, and mailing checks are purely ministerial duties[,]" while "interpret[ing] complex policies, apply[ing] elaborate rules, and mak[ing] judgments" are not).

First, turning to the agreement between the parties, the Plan states that a "fiduciary" means:

> [A] person who exercises any discretionary authority or control respecting management of the Plan, renders investment advice as defined in Section 3(21) of ERISA or has any discretionary authority or responsibility regarding the administration of the Plan.

10

> The Employer and such other individuals either appointed by the Employer or deemed to be fiduciaries as a result of their actions shall serve as Fiduciaries under this Plan and fulfill the fiduciary responsibilities described in Part 4, Title I of ERISA.

[AR 19]. The Complaint does not allege that Defendant Jamerson had any discretionary authority or control over the Plan. In fact, the Complaint only alleges that Defendant Jamerson was a notary public. In addition, based upon the record, there is no evidence to indicate Defendant Jamerson was a functional fiduciary. Defendant Jamerson did not exercise any discretionary authority or control with respect to the Plan nor is it alleged that she rendered investment advice. Without any opposition, the Court cannot find that Defendant Jamerson was a fiduciary. 29 U.S.C. § 1002(21)(A). Accordingly, the Court finds that Defendant Jamerson's performance was purely a perfunctory, ministerial function and that she was not a fiduciary.

Furthermore, the Defendants argue that the Plaintiff's negligence claim against Defendant Jamerson is preempted by ERISA. In this regard, the Complaint alleges that Defendant Jamerson "knowingly or negligently notarized a forged document." [Doc. 1-3 at 7].[8]

ERISA preempts "any and all State laws insofar as they may now or thereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). ERISA defines "State law" to include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). While the Supreme Court once interpreted ERISA's preemption statute broadly, see Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 46 (1987), recently, the "Court has narrowed the preemptive scope of ERISA, moving away from the broadest meaning of the provision." Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp., 399 F.3d 692, 697 (6th Cir. 2005) (hereinafter "PONI"). Specifically, the words "insofar as they . . . relate" in § 1144(a) are "words of limitation that were purposefully written into the statute." Id.; see also

---

[8] Defendants only argue that the negligence claim is preempted by ERISA. The Defendants do not mention the Plaintiff's assertion that Defendant Jamerson "knowingly" notarized a forged document.

11

New York State Conference of BlueCross & BlueShield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1995) (stating that a broad reading "would be to read Congress's words of limitations as mere sham, and to read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality").

In determining whether claims are preempted, courts should look to "the objectives of ERISA to guide its preemption decisions." PONI, 399 F.3d at 698. Moreover, "Congress did not intend . . . for ERISA 'to preempt traditional state-based laws of general applicability that do not implicate the relations among the traditional ERISA plan entities, including the principals, the employer, the plan, the plan fiduciaries, and the beneficiaries.'" Id. (quoting LeBlanc v. Cahill, 153 F.3d 134, 147 (4th Cir. 1998)). PONI explains three areas that are preempted:

> The purpose of ERISA preemption was to avoid conflicting federal and state regulation and to create a nationally uniform administration of employee benefit plans. Thus, ERISA preempts state laws that (1) "mandate employee benefit structures or their administration;" (2) provide "alternate enforcement mechanisms;" or (3) "bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself."

399 F.3d at 698 (quoting Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1468 (4th Cir. 1996)). If claims do not fall within these three categories described above, courts should "focus[] on the nature of the remedy sought by a plaintiff." Thurman v. Pfizer, Inc., 484 F.3d 855, 861 (6th Cir. 2007); see also PONI, 399 F.3d at 703 (stating that preemption "turn[s] on . . . the true nature of the issues underlying the claim").

Here, the Plaintiff's claim against Defendant Jamerson does not implicate any of the three areas of preemption described in PONI. Furthermore, while the Plaintiff is a beneficiary, Defendant Jamerson was not acting as a traditional ERISA plan entity. Therefore, the Plaintiff's claim against Defendant Jamerson does not "implicate the relations among the traditional ERISA

plan entities." PONI, 399 F.3d 698. In addition, the allegation against Defendant Jamerson does not require the Court to evaluate the plan nor does it require the Court to evaluate the parties' performance pursuant to it. The Plaintiff's allegation against Defendant Jamerson is whether she negligently notarized a forged document, which has nothing to do with the Plan. See id., 399 F.3d at 703 (holding that a negligent representation claim against a "non-fiduciary service provider" does not implicate ERISA, as it does not require a court to evaluate whether the service provider violated the terms of an ERISA-governed plan). Essentially, the Plaintiff's cause of action against Defendant Jamerson asserts a "violation of a legal duty independent of ERISA." McLemore v. Regions Bank, 682 F.3d 414, 426 (6th Cir. 2012) (quoting Aetna Health, Inc. v. Davila, 542 U.S. 200, 214 (2004)). Based on these considerations, the claim against Defendant Jamerson is not preempted. See id. ("ERISA does not preempt garden-variety claims against nonfiduciaries providing professional services to an ERISA plan based on breaches of professional responsibility.").

The Court, however, must also look at the nature of the remedy sought when determining whether a claim is preempted by ERISA. See Thurman, 484 F.3d at 861; see also Marks v. Newcourt Credit Group, Inc., 342 F.3d 444, 453 (6th Cir. 2003) ("In deciding whether state-law claims are preempted by ERISA, we have focused on the remedy sought by the plaintiffs."). If a plaintiff seeks benefits due to him/her under the terms of the Plan, then the claim is preempted. See Wright v. Gen. Motors, Corp., 262 F.3d 610, 614 (6th Cir. 2001). However, "[n]ot every cause of action which mentions plan benefits . . . requires preemption." PONI, 399 F.3d at 702.

The Court notes that this issue is a close call. A reading of the Complaint demonstrates that the Plaintiff seems to be seeking benefits due under the Plan and compensatory damages. Specifically, the Complaint states:

> [T]he Plaintiff has suffered damages in the amount of $110,000.00 plus an additional sum to represent the value of the Plan at Mr. Watson's death and is entitled to a judgment accordingly because her damages are the result of the willful and negligent acts of the Defendants as stated in this complaint.

[Doc. 1-1 at 7]. Later, the Plaintiff refers to the $110,000.00 as compensatory damages. See PONI, 399 F.3d at 703 ("Upon review of the pleadings, we conclude that PONI's damage request is not seeking recovery of denied plan benefits or contributions, but rather compensatory damages proximately caused by the breach of contract."); Marks, 342 F.3d at 453 ("Because he seeks damages equaling the benefits he would have received under the plan, it seems at first glance that his claims relate to an ERISA benefit plan. However, a close reading of [the] complaint reveals that the reference to plan benefits was only a way to articulate "specific, ascertainable damages.") (Citations omitted). However, the Plaintiff's request for "an additional sum to represent the value of the Plan at Mr. Watson's death" is clearly seeking benefits due to her under the terms of the Plan. See Thurman, 484 F.3d at 862 (stating that "any request for lost benefits under the plan might be preempted").

Because the Plaintiff failed to articulate any argument on her behalf, the Court finds the Defendants' argument persuasive. Accordingly, the Plaintiff's claim that Defendant Jamerson negligently notarized a forged document is preempted due to the nature of the relief sought.

### C. Claims Pursuant to 29 U.S.C. § 1109

The Complaint alleges that on October 14, 2004, and July 1, 2005, Defendant Rentenbach negligently or willfully violated 29 U.S.C. § 1109 by distributing funds to Mr. Watson without the Plaintiff's consent. The Plaintiff seeks compensatory damages in the amount

of $110,000, plus an additional sum to represent the value of the Plan at Mr. Watson's death; attorney fees, expenses, and costs; and any further relief to which she may be entitled.

In their motion, Defendants argue that § 1109 does not permit an individual beneficiary to recover damages for breach of fiduciary duties. [Doc. 31 at 10].

"It is the violation of section 1109 which supports any claim under 29 U.S.C. § 1132(a)(2)." Adcox v. Teledyne, Inc., 810 F. Supp. 909, at 916 (N.D. Ohio 1992). Specifically, Section 1132 "permits civil actions to be brought by a beneficiary 'for appropriate relief under section 1109.'" Id. (quoting 29 U.S.C. § 1332(a)(2)). Section 1109(a) provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

ERISA holds fiduciaries liable for breach of their duties and authorizes a beneficiary to bring an action against a fiduciary who has violated § 1109. See 29 U.S.C. §§ 1109(a) and 1132(a)(2). The Sixth Circuit has held that § 1109 "was intended to protect 'the entire plan, rather than . . . the rights of an individual beneficiary.'" Davis v. Ky. Fin. Cos. Ret. Plan, 887 F.2d 689, 696 (6th Cir. 1989) (quoting Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142 (1985)). "[T]hus, fiduciaries can be liable only to the plan for breach of their duties." Johnson v. Reliance Standard Life Ins. Co., No. 05-2069, 2005 WL 3454329, at *3 (W.D. Tenn. Dec. 16, 2005) (quoting Davis, 887 F.2d at 696); see also Goodyear, 438 F. Supp. 2d at 795 (stating that "[p]lan fiduciaries who breach their responsibilities under ERISA may be held personally liable to make good to the plan any losses resulting from the breach and to restore to

15

the plan any profits that have been made") (citing 29 U.S.C. § 1109(a)). Moreover, the Supreme Court noted that the authors of § 1109 "were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." Russell, 473 U.S. at 142 ; see also Briscoe v. Fine, 444 F.3d 478, 486 (6th Cir. 2006) ("Section 1109, in turn, makes any person found to be a fiduciary personally liable to the ERISA-covered plan for any damages caused by that person's breach of fiduciary duties.").

In the instant matter, the Complaint seeks recovery on her own behalf, not on behalf of the Plan, and the Plaintiff has failed to argue to the contrary. Therefore, the cause of action is unavailable. See Adcox, 810 F. Supp. at 917 (stating that section 1109 "only permits recovery to inure to the ERISA plan, not to individual beneficiaries"). Accordingly, the Court finds that the Plaintiff's action under 29 U.S.C. § 1109 is not authorized.

## IV. CONCLUSION

After carefully considering the Administrative Record, the parties' filings, and the relevant legal authorities, the Court finds the claims against Defendants Rentenbach and Jamerson only are **DISMISSED WITH PREJUDICE**. Therefore, it is hereby **RECOMMENDED**[9] that the Defendants' Motion for Judgment on the ERISA Administrative Record [**Doc. 30**] be **GRANTED** as to Defendants Rentenbach and Jamerson only.

Respectfully submitted,

　　s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[9] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Fed'n of Teachers, 829 F.2d 1370 (6th Cir. 1987).